**SEA–LAND SERVICES, INC., and Crawford & Co., Appellants,**

**v.**

**STATE of Alaska, SECOND INJURY FUND, Appellee.**

**No. S–1582.**

Supreme Court of Alaska.

May 29, 1987.

Leon T. Vance, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellants.

Jan Hart DeYoung, Asst. Atty. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Sea-Land Services, Inc. (Sea-Land) appeals the decision of the superior court affirming the Alaska Worker's Compensation Board's (AWCB) denial of its claim for reimbursement from the Second Injury Fund. We affirm.

## I. FACTS.

In 1974, Jonathan Vincent had surgery for a herniated disk.[1] In March 1977, while employed by Sea-Land, Vincent underwent a physical examination required by federal law to maintain his certification as a truck driver. The Department of Transportation physical examination report noted in part that Vincent had a history of "[h]ead or spinal injuries." The report also indicated that Vincent had no permanent defects from prior injuries. A copy of the report was placed in Vincent's personnel file at Sea-Land. It is undisputed that Sea-Land employees knew prior to December 1977 that Vincent had previously undergone back surgery.

In December 1977, while fueling a truck at Sea-Land's loading yard, Vincent slipped and twisted his back. This injury aggravated his prior herniated disk problem, resulting in temporary total disability. This disability was substantially greater than that which would have been produced by the second injury alone.

After paying Vincent's worker's compensation benefits, Sea-Land and Crawford & Co., Sea-Land's worker's compensation insurer, sought reimbursement from the Second Injury Fund. The parties stipulated that Sea-Land met the requirements for reimbursement with the exception of the written record requirement of AS 23.30.-

---

1. A herniated disk qualifies as a "permanent physical impairment" under AS 23.30.-205(d)(1)(Z).

205(c). The AWCB denied Sea-Land's claim because Sea-Land had not established its knowledge of Vincent's prior condition by a written record.

Sea-Land and Crawford & Co. appealed to the superior court, which affirmed the AWCB decision. This appeal followed.

## II. THE WRITTEN RECORD REQUIREMENT.

■ The Second Injury Fund was created to encourage employers to hire and retain partially disabled employees. *See Employers Commercial Union Ins. Group v. Christ*, 513 P.2d 1090, 1093 (Alaska 1973). The Fund reimburses qualifying employers for compensation payments to disabled employees subsequent to those payable for the first 104 weeks of disability. AS 23.30.205(a). An employer otherwise entitled to reimbursement from the Fund must establish by a written record that it had knowledge of the employee's preexisting impairment before the subsequent injury and retained the employee despite such knowledge. AS 23.30.205(c).[2]

■ The only issue in the instant appeal is whether Sea-Land established its knowledge of Vincent's preexisting impairment by a written record. This issue turns on statutory interpretation rather than formulation of fundamental policy involving particular expertise of administrative personnel; therefore, we need not defer to the interpretation of the AWCB, and will independently consider the meaning of AS 23.-30.205(c). *See Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 813 (Alaska 1978). The meaning of this provision must be determined from its text construed in light of the purpose of the Second Injury Fund. *See Wien Air Alaska v. Arant*, 592 P.2d 352, 356 (Alaska 1979).

■ The written record requirement of AS 23.30.205(c) serves a dual purpose. First, it helps to ensure that Fund reimbursement furthers the statutory purpose

by providing evidence that the employer actually knew of the employee's preexisting impairment; it protects the Fund against spurious or collusive claims. *See U.S. Pipe & Foundry Co. v. Caraway*, 546 S.W.2d 215, 219 (Tenn.1977). Second, it obviates the necessity of litigating the question of whether the employer had knowledge of the preexisting condition. *See Boone's Masonry Constr. Co. v. South Carolina Second Injury Fund*, 267 S.C. 277, 227 S.E.2d 659, 661 (1976).

■ In interpreting a written record requirement substantially identical to AS 23.-30.205(c), the Tennessee Supreme Court held that:

> when it can fairly and reasonably be inferred from such records as are produced in evidence that the employer did have knowledge of the physical handicap or impairment of the employee before occurrence of the injury which activates the Second Injury Fund claim, then the [statutory] requirements ... are satisfied.

546 S.W.2d at 219. We adopt the test set forth by the Tennessee court: an employer is entitled to reimbursement from the Second Injury Fund if it produces a written record from which its prior knowledge of the employee's qualifying disability can fairly and reasonably be inferred.

■ The written record need not contain the exact medical terminology employed in AS 23.30.205(d)(1). *See Leiker v. Manor House*, 203 Kan. 906, 457 P.2d 107, 113–14 (1969). For example, the written record requirement may be met by a notation in a personnel evaluation report that an employee's loss of his arm does not affect his ability to perform his job; no medical record is required. *Christ*, 513 P.2d at 1091–92.

The written record in this case, Vincent's physical examination report, contained a box marked "yes" next to "[h]ead or spinal

---

**2.** AS 23.30.205(c) provides:

In order to qualify under this section for reimbursement from the second injury fund, *the employer must establish by written records that the employer had knowledge of the per-* *manent physical impairment before the subsequent injury* and that the employee was hired or retained in employment after the employer acquired that knowledge.

[Emphasis added.]

injuries." Although the form called for an explanation of an affirmative answer, none was set forth. Moreover, the box marked "no" was checked next to "[p]ermanent defect from illness, disease, or injury." In the spaces on the form provided for "[e]xtremities," the following answers appear: "[u]pper OK," "[l]ower OK," and "[s]pine OK."

 We conclude that it cannot reasonably be inferred from this written record that Sea-Land knew of Vincent's permanent disability. As the superior court observed, "[a]ny possible inference of such injury which the 'yes' answer to '[h]ead or spinal injuries' might create is negated by the other answers on the form." We therefore hold that Sea-Land is not entitled to reimbursement from the Fund because it has not complied with the written record requirement of AS 23.30.205(c).[3]

AFFIRMED.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

The parties have stipulated that Sea-Land met the requirements for reimbursement in this case, except for the written record requirement of AS 23.30.205(c). As I understand this stipulation, Sea-Land in fact knew of Vincent's preexisting impairment when it hired him, and retained him despite such knowledge. However, its written record was inadequate to show such knowledge.

In view of the stipulation, the identified purposes of the written record requirement have been satisfied: the state is obviously convinced that this claim is neither spurious nor collusive and there is no need to litigate the issue of Sea-Land's knowledge. Unfortunately, the holding of the court has the counterproductive effect of forcing the parties to litigate the adequacy of the written record.

The only justification for this holding, alluded to by the court but never developed, is administrative convenience. When the State of Alaska Second Injury Fund is willing to stipulate to the employer's knowledge of the employee's preexisting impairment, I fail to understand how the state is administratively inconvenienced by *not* litigating the issue. The issue of knowledge is present regardless of the written record requirement. If the state disputes or is unpersuaded that the employer had knowledge in fact when the employer cannot produce an adequate written record, the holding is justified on administrative convenience grounds. When the state concedes the issue, the holding is simply unjustified, and in my view unjustifiable.

---

**3.** Sea-Land also argues that it is entitled to reimbursement because it had actual knowledge of Vincent's prior injury. Sea-Land contends that, given its actual knowledge, a written record is unnecessary to fulfill the goals of the Second Injury Fund.

Had the legislature desired to grant reimbursement based on the employer's actual knowledge of the employee's disability, it could have done so. However, the legislature instead required evidence in the form of a written record. Our function is not to re-draft the statute, but to enforce it according to its plain meaning.

*See generally* 2 A. Larson, Workmen's Compensation Law, § 59.33(a)–(f) (1986).