917 P.2d 272

**TRANSPORTING RENEWABLE RESOURCES, INC., Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**William E. Batson, Respondent Employee,**

**SPECIAL FUND DIVISION, Respondent Party in Interest.**

No. 1 CA–IC 95–0060.

Court of Appeals of Arizona, Division 1, Department A.

May 14, 1996.

State Compensation Fund by David K. Schatz, Phoenix, for Petitioners Employer Carrier.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

William E. Batson, Heber, In Propria Persona.

Special Fund Division by Ronald M. Andersen, Phoenix, for Real Party in Interest.

OPINION

TOCI, Judge.

This is a review of Arizona Industrial Commission ("Commission") decisions upon hearing and upon review denying apportionment under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–1065(C) (1995). The issue is whether a stipulation between the employer and the Special Fund Division of the Commission (the "Special Fund") that the employer knew of a preexisting impairment when it hired and retained William E. Batson ("claimant") satisfied the statutory "written records" requirement in section 23–1065(C)(2). We hold that it does and accordingly set aside the decisions upon hearing and upon review.

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant was hired by Transporting Renewable Resources, Inc. ("TRR") as a truck driver in 1989. He injured his neck in November 1991. The injury ultimately disabled claimant from driving a truck, with a resulting loss of earning capacity.

Petitioner Carrier (the "Fund") made a claim for apportionment under A.R.S. section 23–1065(C). The Fund and the Special Fund Division subsequently stipulated to the following material facts:

(1) claimant suffered a nonindustrial gunshot wound in 1979, which resulted in a partial amputation of his left leg;

(2) TRR knew of this impairment when it hired claimant and retained him;

(3) TRR had no written record before the industrial injury establishing its knowledge of claimant's impairment; and

(4) all requirements for apportionment are satisfied except subpart (2), and the Fund and Special Fund Division dispute whether or not this requirement is satisfied.

The Fund and the Special Fund Division also submitted memoranda; the Special Fund Division filed a supplemental citation to *Fremont Indemnity Co. v. Industrial Comm'n*, 182 Ariz. 405, 897 P.2d 707 (App. 1995).

The Administrative Law Judge ("ALJ") issued a decision upon hearing denying apportionment and affirmed the decision on administrative review. The Fund then brought this special action. We have jurisdiction under A.R.S. sections 12–120.21 (1992) and 23–951(A) (1995), and Rule 10, Arizona Rules of Procedure for Special Actions (1988).

## DISCUSSION

■ To qualify for apportionment of an employee's subsequent permanent impairment, A.R.S. section 23–1065(C)(2) provides that an employer or its carrier must "establish[ ] by written records that the employer had knowledge of the permanent impairment at the time the employee was hired, or that the employee continued in employment after the employer acquired such knowledge."

The Fund, relying on *Special Fund Division v. Industrial Comm'n*, 182 Ariz. 341, 897 P.2d 643 (App.1994) ("*Morin*"), argues that the requirement of a written record does not apply to the second clause of the quoted subsection. *Morin*, however, does not support the Fund's argument. The carrier in *Morin* established by written record that the employer knew that the claimant had undergone knee surgery and a laminectomy. The *Morin* court concluded that this knowledge supported an inference that the employer also knew that the claimant had impairments from these surgeries. 182 Ariz. at 347, 897 P.2d at 649. Thus, *Morin* does not address whether the requirement of a written record applies to the second clause of subpart (2).

More significantly, *Fremont* rejects substantially the same argument that the Fund presents here. The carrier in *Fremont* argued that a written record of continued employment satisfies the statute. According to the carrier in *Fremont*, if an employer had such a written record, it or its carrier then could rely on oral evidence to establish that the employer knew of a preexisting impairment before the industrial injury and during the continued employment. 182 Ariz. at 408, 897 P.2d at 710.

We held in *Fremont*, however, that this interpretation trivialized the written records requirement. Because employers always would have a written record of continued employment, oral evidence that an employer actually knew of an impairment before an industrial injury would *always* satisfy the statute. *Id.*

In *Fremont*, the employer sought to produce testimony from the claimant and her supervisor to establish knowledge of a preexisting impairment. *Id.* at 407–08, 897 P.2d at 709–10. This, of course, would require a hearing and a credibility assessment by an ALJ. Here, by contrast, because the Special Fund has *stipulated* that TRR knew of claimant's leg amputation, no hearing is required.

The significance of the stipulation is twofold. First, relying on a stipulation of knowl-

edge to satisfy subpart (2) does not trivialize the written records requirement. Stipulations will not occur in every case, but the Special Fund should stipulate when, as here, the employer's knowledge reasonably cannot be doubted.

■ Second, the purposes of the written records requirement are to ensure that the employer actually knows of the employee's preexisting impairment, thus protecting against spurious or collusive claims, and to obviate the necessity of litigating whether the employer had knowledge of the preexisting condition when no one disputes the existence of that knowledge. *Sea–Land Services, Inc. v. Second Injury Fund,* 737 P.2d 793, 796 (Alaska 1987) (Compton, J., dissenting). A stipulation by the Special Fund that an employer actually knew of a preexisting impairment eliminates both the risk of collusion and the need for litigation.

■ Further, apportionment has a remedial purpose. *See, e.g., Country Wide Truck Serv. v. Industrial Comm'n,* 181 Ariz. 410, 411, 891 P.2d 877, 878 (App.1994). Although subpart (2) of subsection 23–1065(C) literally requires a written record in every case, a literal interpretation elevates form over substance and frustrates the remedial purpose of the statute. Literal interpretation, in short, leads to a result "such as cannot be contemplated the Legislature intended...." *Garrison v. Luke,* 52 Ariz. 50, 56, 78 P.2d 1120, 1122 (1938); *see also Mail Boxes, Etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 122, 888 P.2d 777, 780 (1995) (construing undefined term to avoid absurdity and to fulfill remedial purpose of statute).

For these reasons, we conclude that the stipulation in this case satisfies A.R.S. section 23–1065(C)(2). We accordingly set aside the decisions upon hearing and review.

CONTRERAS, P.J., and WEISBERG, J., concur.